IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KIMBERLY A. ALEXANDER | ) | |
| | ) | |
| v. | ) | No. 3:17-1453 |
| | ) | |
| UNIVERSITY OF MEMPHIS | ) | |

**To: The Honorable Waverly D. Crenshaw, Chief District Judge**

# R E P O R T   A N D   R E C O M M E N D A T I O N

Presently pending is Defendant's motion for summary judgment (*see* Docket Entry ("DE") 52), to which the *pro se* Plaintiff has filed a response. *See* DE 60. Defendant has also filed a subsequent reply to Plaintiff's response (*see* DE 62), to which Plaintiff has filed a sur-reply. *See* DE 63. This matter was referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Rule 72 of the Federal Rules of Civil Procedure. *See* DE 9.

For the reasons that follow, the undersigned respectfully recommends that Defendant's motion (DE 52) be GRANTED and this action be dismissed.

## I. BACKGROUND

**A. Factual History**

Kimberly Alexander ("Plaintiff") is a former employee of the University College ("UC") at the University of Memphis ("Defendant" or "the University") in Memphis, Tennessee. Plaintiff began her employment with the University in August of 2014 as a clinical assistant professor in child development. DE 53-1 at 42. The employment contract stated that Plaintiff's term would run

1

from August 18, 2014 through May 14, 2015. *Id*. The contract additionally stated that Plaintiff's position was a "temporary appointment" that "does not include any right to expectancy or interest in permanent or continuous employment, extension of the period of employment, or renewal of the appointment," and that the agreement between the parties could be terminated "upon thirty (30) days notice." *Id*. at 42-43. Plaintiff testified that this contract continued governing her employment during the 2015-2016 academic year because the University did not require her to sign a new contract. *Id*. at 2-3.[1]

During the fall 2015 semester, Plaintiff, an African-American, began to voice complaints about one of her colleagues in the UC, Dr. Loretta Rudd, before filing a grievance on November 24, 2015 in which she alleged that both Dr. Rudd and Dr. Joanne Gikas had discriminated against her based on her race. DE 53-1 at 59; DE 61 at ¶¶ 6, 7.[2] After Plaintiff and the University failed to informally resolve the grievance before the Tennessee Board of Regents (DE 53-1 at 63), Plaintiff was transferred from the UC to the College of Education for the spring

---

[1] Despite this testimony, Plaintiff disputes that the contract continued governing the subsequent academic year in her response to Defendant's statement of undisputed facts. DE 61 at 3. However, Plaintiff's only reason for disputing the claim is that she was allegedly "mandated to work as program chair without compensation," with a citation to "Exhibit A." DE 61 at 3. She does not explain the relevance of this position to the terms of her employment for the 2015-2016 academic year, and "Exhibit A" contains only the contact information for various "University College Faculty/Instructors/Lecturers/Program Coordinators" and a set of emails that makes no mention of Plaintiff's purported work as a "program chair." DE 60-2 at 1-3. Defendant's statement that the original contract also covered Plaintiff's employment for the 2015-2016 academic year is therefore accepted as undisputed for purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to … properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion.").

[2] Plaintiff disputes the allegation that she began to complain about Loretta Rudd during the fall semester in her response to Defendant's statement of undisputed facts, but again fails to meaningfully explain her opposition. The allegation is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2). *See also* Local Rule 56.01(c)(3) (noting that a party opposing a purported statement of fact must demonstrate that the fact is disputed "by specific citation to the record").

2016 semester. DE 61 at ¶ 10. The University claims that this decision was mutual and based on Plaintiff's previously expressed preference for working at the College of Education. *Id*.

On January 28, 2016, Plaintiff signed an agreement entitled "Amendment to Notice of One-Year Appointment and Agreement of Employment for Faculty," which memorialized her transfer to the College of Education. DE 53-1 at 44. Plaintiff was assigned courses in the Early Childhood Education program and continued to teach internship courses, under the supervision of Dean Dan Lattimore, which she had previously taught at the UC. DE 61 at ¶ 13.[3] The terms of the agreement dictated that Plaintiff would be evaluated based on student evaluations from the fall 2015 semester and her "performance beginning January 19, 2016." DE 53-1 at 44.

Plaintiff joined the faculty of the College of Education in January of 2016, which included Drs. Beverly Cross, Brian Wright, and Shelly Counsell. DE 61 at ¶ 15. Dr. Cross served as a liaison between the University and local school districts, which required her to interact with representatives from the local schools and facilitate experiences for University students at these schools. *Id.* at ¶ 23.[4] Shortly after the semester began, a representative from a local school contacted Dr. Cross to inform her that Plaintiff had recently brought University students to a classroom observation at the school without advising anyone from the school that she was planning to do so. *Id*. at ¶ 25.[5] This prompted Dr. Cross to hold a meeting in early February with Plaintiff,

---

[3] Plaintiff writes "Disputed!" in response to this purported statement of material fact but nevertheless admits that Dean Lattimore was assigned to supervise her. DE 61 at ¶ 13. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

[4] Plaintiff again claims that this statement is "Disputed!" but states only that she is "not aware of Dr. Cross's responsibilities[.]" DE 61 at ¶ 23. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

[5] Plaintiff disputes this claim but provides no countervailing evidence or citation to the record. DE 61 at ¶ 25. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

3

along with Drs. Wright and Counsell, to remind the childhood education professors of the protocol for scheduling classroom observation experiences. *Id*. at ¶¶ 22, 26.

In a separate incident shortly after her transfer to the College of Education, Plaintiff asked Dr. Wright to help her move furniture into her new office. *Id*. at ¶ 19. When Dr. Wright later mentioned to Dr. Cross that Plaintiff had requested such assistance, Dr. Cross advised Dr. Wright that the University did not permit faculty to move their own furniture due to potential liability issues. *Id*. at ¶ 20. Defendant claims that the University's policy involves filing a request via an administrative assistant, while Plaintiff contends that she was "required" to move her own furniture. *Id*. at ¶ 21.

Students participating in the UC internship courses were required to attend three class meetings with Plaintiff. *Id*. at ¶ 40. At some point near the beginning of the spring semester, Dean Lattimore, as part of his duty to oversee scheduling and management of students' classes, asked Plaintiff to make sure that she did not schedule these meetings at times that would conflict with the students' other classes. *Id*. at ¶ 41, 43.[6] On January 25, Dean Lattimore sent follow-up emails to Plaintiff reminding her to avoid such class conflicts. DE 53-1 at 73-74. However, on March 2, Plaintiff scheduled a class meeting for the following morning at 10:00 a.m., which conflicted with other classes previously scheduled for students in the UC program. *Id.* at 77-78; DE 61 at ¶ 47.[7]

---

[6] Plaintiff disputes that Dean Lattimore asked her to avoid conflicts with the students' other classes despite testifying during her deposition that he did so. DE 53-1 at 27. Plaintiff also fails to refute the statement of fact with any citation to the record. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

[7] Plaintiff again disputes Defendant's characterization despite evidence demonstrating that Plaintiff scheduled an internship class meeting for March 3, 2016 at 10:00 a.m., then emailed Dean Lattimore to request that he secure a certain room for this meeting, at which point Dean Lattimore responded with the following: "No, I told you not to schedule that at a time conflicting with classes students have in the program." DE 53-1 at 77-78. Plaintiff proceeded to apologize to Dean Lattimore for the scheduling error. *Id*. at 77. Plaintiff cites an email she sent to her students

4

In April of the spring 2016 semester, multiple students approached Dr. Counsell to "express concerns" about Plaintiff's teaching methods. *Id.* at ¶ 31.[8] Two of the students submitted reports detailing their various complaints, which faulted Plaintiff for failing to adequately teach the subject material, failing to provide grades for assignments, failing to teach her classes for the full allotted time period, and failing to communicate with students who reached out to her. *Id.* at ¶ 32; DE 53-4 at 5-12.[9] Dr. Counsell forwarded the written complaints to the interim chair of the College of Education, Dr. Lee Allen, who recommended that Dr. Counsell hold a meeting with the other professors, including Plaintiff, to discuss the students' complaints. DE 61 at ¶ 33.[10] The meeting, which took place on April 22, ended with Plaintiff exiting the room angrily before returning to chastise Dr. Counsell for discussing such issues publicly. *Id.* at ¶ 34.[11]

---

approximately 30 minutes after Dr. Lattimore's response in which she tries to reschedule the meeting (DE 60-14 at 2), but such evidence does not create an actual evidentiary conflict. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

[8] Plaintiff disputes this claim but provides no countervailing evidence or citation to the record. DE 61 at ¶ 31. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

[9] Plaintiff disputes this characterization of the written complaints but provides only a meandering response with a claim that the subject students' complaints are "here say." DE 61 at ¶ 32. Plaintiff also cites a series of positive evaluations from other students (*see* DE 60-12 at 2-24), but such evidence does not controvert the written complaints at issue. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3)

[10] Plaintiff disputes this claim but provides no countervailing evidence or citation to the record. DE 61 at ¶ 25. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

[11] Plaintiff disputes this characterization, stating that she instead "asked Dr. Counsell to speak with her calmly[] if she has questions or concerns." DE 61 at ¶ 34.

5

On May 15, 2016, Plaintiff filed a grievance with the University in which she claimed that Dr. Wright and Dr. Counsell were "working in collaboration with Dr. Cross to continue her efforts to retaliate and harass me." DE 53-1 at 80, 82. Plaintiff later filed an additional grievance, which is neither signed nor dated, claiming that Dean Lattimore and Dr. Karen Weddle-West were "attempting to make it difficult for [Plaintiff] to be successful" based on their email exchanges admonishing Plaintiff to avoid conflicts with the students' class schedules. *Id*. at 84.[12] She also claimed that Dr. Cross "stepped in as a bully in an official early childhood department meeting without authorization" (*id*.), which apparently refers to the February meeting conducted by Dr. Cross.

On May 20, Dean Ernest Rakow emailed Plaintiff to advise her that the University would provide a contract for her to continue in her role with the University for the 2016-2017 school year. DE 53-7 at 1. However, according to the University this correspondence was sent to Plaintiff before Dean Lattimore had received the formal written complaints from students concerning Plaintiff's teaching. DE 53-2 at ¶ 12; DE 61 at ¶ 53.[13] Based in part on review of such complaints, the University reversed course and opted not to renew Plaintiff's faculty appointment, which it communicated to Plaintiff via letter from Dr. Weddle-West on July 15, 2016. DE 53-1 at 88; DE 61 at ¶ 54. Additional reasons cited by the University as grounds for not renewing the appointment included scheduling meetings with students that conflicted with their other classes despite being directed not to do, exhibiting threatening and disruptive behavior during meetings with colleagues,

---

[12] Dr. Weddle-West was the Provost at the University in 2016. DE 53-2 at 1.

[13] Plaintiff again writes "Disputed!" in response to this purported fact but provides no countervailing evidence or citation to the record. DE 61 at ¶ 53. The statement is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

6

exhibiting threatening behavior and language with students, and failing to adequately teach the course material. DE 53-2 at ¶ 13.

On June 9, 2016, prior to the issuance of Dr. Weddle-West's letter, Plaintiff filed a charge of retaliation with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). DE 53-1 at 86. On June 17, a representative of the EEOC, Demetrica Stovall, attempted to email the charge to deputy counsel for the University, Latosha Dexter, but mistyped Ms. Dexter's email address. DE 61 at ¶¶ 56-58.[14] The University therefore did not receive the original charge and only became apprised of the filing after Ms. Stovall reached out to Michael Washington, director of institutional equality at the University, on July 25 to discuss Plaintiff's intention to amend her complaint to include the non-renewal of her appointment. *Id*. at ¶ 59; DE 53-6 at 3-5.[15] As such, Defendant did not learn of Plaintiff's charge with the EEOC until July 25, 2016, over one month after it was filed, by which time Dr. Weddle-West had already advised Plaintiff that her contract would not be renewed. DE 61 at ¶¶ 59, 60.[16]

**B. Procedural History and Motion for Summary Judgment**

Plaintiff filed a complaint against the University and Dr. Rudd in which she alleged two violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), one for race discrimination and one for retaliation. *See* DE 1, 1-1. In lieu of an answer to Plaintiff's complaint, Defendant filed a motion to dismiss under Rule 12(b)(3) and (6) of the Federal Rules of Civil Procedure in which

---

[14] Ms. Stovall inadvertently sent the charge to "videxter@memphis.edu," while Ms. Dexter's actual email address is "vldexter@memphis.edu." DE 53-6 at 3; DE 61 at ¶¶ 57-58.

[15] Plaintiff disputes each of these purported facts but again provides no countervailing evidence or citation to the record. DE 61 at ¶ 53. Each of the statements is therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

[16] Plaintiff provided no response to these purported facts. They are therefore accepted as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 56.01(c)(3).

it argued, respectively, that this District was not the proper venue for the lawsuit and that Plaintiff's allegations failed to support Title VII claims against the University. *See* DE 15, 16. The Court granted Defendant's motion with respect to the race discrimination claim in light of Plaintiff's failure to include racial discrimination as part of her charge with the EEOC but denied the motion with respect to the retaliation claim and Defendant's argument regarding venue. *See* DE 21. The Report and Recommendation was adopted by the District Judge (*see* DE 25), thus leaving only Plaintiff's claim for retaliation under Title VII.[17]

Following the conclusion of discovery, Defendant filed the current motion in which it contends that summary judgment is appropriate because none of the conduct cited by Plaintiff constitutes retaliation. Defendant specifically argues that Plaintiff has failed to produce any evidence that: (1) her colleagues engaged in retaliatory conduct; (2) her supervisor, Dean Lattimore, engaged in retaliatory conduct; (3) the University's decision not to renew Plaintiff's contract was retaliatory; and (4) the University created a hostile work environment for Plaintiff. Defendant alternatively argues that it possessed legitimate, non-discriminatory reasons for all of the conduct at issue.

Plaintiff does not address Defendant's assertions directly or cite to relevant evidence, instead arguing that she was subject to "unprecedented scrutiny" by Dean Lattimore following the filing of her grievance related to Dr. Rudd. Plaintiff also reiterates the alleged abuse she suffered from Dr. Rudd, as well as continued bullying from Dr. Counsell and others. Plaintiff also appears to suggest that the formal written complaints submitted by students and relied on by the University were not authentic. DE 60 at 7.

---

[17] The Court's additional recommendation of dismissal of all claims against Dr. Rudd (DE 21 at 5-6) was subsequently adopted by the District Judge. *See* DE 26.

## II. ANALYSIS

### A. Standard of Review

#### 1. Summary Judgment

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County.*, 203 F.3d 426, 431 (6th Cir. 2000). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of any genuine factual dispute. *Anderson*, 477 U.S at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment the party opposing the motion must present affirmative evidence to support her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## 2. Title VII

Under Title VII, it is unlawful for an employer to "discriminate against any of [its] employees ... because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). A claim brought under Title VII must be supported by direct evidence of unlawful conduct or by circumstantial evidence that raises an inference of unlawful conduct. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence, if believed, requires no inferences to conclude that unlawful conduct was a motivating factor in the challenged action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

If the plaintiff relies upon circumstantial evidence, the Court utilizes the burden shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff is first required to establish a *prima facie* case of unlawful conduct, which requires that she show the following: (1) that she engaged in a protected activity; (2) that the defendant knew she engaged in the protected activity; (3) that the defendant subsequently took an adverse action against her; and (4) that there was a causal connection between the protected activity and the adverse action. *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 565 (6th Cir. 2004). Alternatively, the plaintiff can establish a *prima facie* case by proving that she was "subjected to severe or pervasive retaliatory harassment by a supervisor" and that there was a causal connection between the protected activity and the harassment. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000).

If the plaintiff is successful in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged

conduct. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant articulates such a reason, the presumption drops from the case and the plaintiff must then show that the reason offered by the defendant is a pretext for unlawful conduct. *Id*. at 508. Regardless of which method of proof is utilized, the ultimate burden is on the plaintiff to show that she suffered unlawful conduct under Title VII. *Id*. at 518.

**B. Plaintiff's Claims**

    **1. Alleged Retaliatory Conduct by Coworkers**

Summary judgment should be granted with respect to Plaintiff's claims of retaliation by her coworkers as Plaintiff's attempt to establish a *prima facie* case of unlawful conduct is deficient in numerous ways. First, Plaintiff offers no evidence that any of her colleagues who allegedly engaged in retaliatory conduct knew that she had filed a grievance with the University. Plaintiff admits that she did not inform Drs. Cross, Wright, or Counsell that her transfer to the College of Education was intended to resolve a grievance and further concedes that neither Dr. Wright nor Dr. Counsell was aware at any point during the spring 2016 semester that any grievance had been filed. DE 61 at ¶¶ 16, 17. Plaintiff therefore cannot establish that these individuals knew she had engaged in protected activity under the *McDonnell Douglas* framework.

Plaintiff does allege that Dr. Cross knew of the grievance during the spring 2016 semester but her only support for this assertion is a reference to her own deposition testimony in which she claimed that Dr. Cross told her in January of 2016 that "no one can file a grievance against the University and still maintain employment with the University." DE 60-8 at 1-2. However, even assuming that such a statement was made,[18] Plaintiff must set forth additional evidence to establish coworker retaliation, including: (1) that Dr. Cross' conduct was sufficiently severe so as to

---

[18] Dr. Cross denies that she made this statement. DE 53-3 at ¶ 8.

11

dissuade a reasonable worker from making or supporting a charge of discrimination; (2) that supervisors or members of management have actual or constructive knowledge of Dr. Cross' retaliatory behavior; and (3) that supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to Plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances. *Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014) (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008)). Plaintiff alleges that Dr. Cross engaged in retaliatory conduct by "arbitrarily call[ing] a meeting," which ostensibly refers to the February 2016 meeting with the other early childhood education professors, and attempting to "bully" Plaintiff during this meeting. DE 1 at 5. Plaintiff cites nothing to support her claim that Dr. Cross' decision to hold this meeting rises to the level of retaliatory conduct, which is significant given that the meeting was conducted in response to a local school representative's indication to Dr. Cross that Plaintiff had taken her students to the school for a classroom observation without obtaining authorization and without informing the school beforehand. DE 61 at ¶ 25.

Nor does Plaintiff offer any support for her position that Dr. Cross' role in preventing Dr. Wright from assisting her with her furniture constitutes retaliatory conduct. The University presents evidence that moving furniture is generally facilitated by an assistant and not by faculty. *See* DE 53-3 at ¶ 10; DE 53-5 at ¶ 8. Plaintiff attempts to refute this evidence by attaching a correspondence that actually appears to confirm the University's policy, namely an email from Dean Lattimore advising Plaintiff that he "will be happy to have a graduate assistant help you move your personal items[.]" DE 60-7 at 5. There is thus no evidence to suggest that such conduct was retaliatory.

Plaintiff's response to Defendant's motion fails to establish that any actions taken by her colleagues were anything more than "garden-variety personality conflicts between people living and working in close quarters." *Perkins v. Harvey*, 368 F. App'x 640, 646 (6th Cir. 2010). Plaintiff does not meaningfully address any of Defendant's arguments, instead relying entirely on unfounded accusations of intimidation and bullying. This falls far short of establishing a *prima facie* case of retaliation as designated under Title VII.

Alternatively, the Court finds that even if Plaintiff has established a *prima facie* case of retaliation by her coworkers, Defendant has met its burden of articulating legitimate, nondiscriminatory reasons for the actions of Plaintiff's colleagues. As noted above, the decision by Dr. Cross to conduct a meeting concerning scheduling protocol for observations at local schools came in response to Plaintiff's unauthorized excursion to one of the schools. Defendant has also provided evidence that the University's policy for moving furniture involved contacting an assistant to avoid the need for faculty members to move their own furniture. Plaintiff has offered no evidence that such actions represented pretext for unlawful conduct. The Court therefore finds and concludes that summary judgment is appropriate.

**2. Alleged Retaliatory Conduct by Supervisor**

Summary judgment should also be granted with respect to Plaintiff's claims of retaliation by her supervisor, Dean Lattimore. While it is undisputed that Dean Lattimore knew about Plaintiff's filing of a grievance, there is no evidence indicating that Dean Lattimore took any adverse action against Plaintiff.

Plaintiff appears to base her claim against Dean Lattimore on two events, the first of which is Dean Lattimore's attendance at a class meeting that Plaintiff presided over with her internship students. Plaintiff fails, however, to identify any evidence to support her suggestion that such

13

attendance represents adverse activity. Evidence proffered by Defendant instead establishes that Dean Lattimore was Plaintiff's supervisor for these internship courses and had the authority to observe the classes, which Plaintiff confirmed during her deposition. DE 53-1 at 31; DE 61 at ¶ 39. This is far from materially adverse action that "produces an injury or harm." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006).

Plaintiff additionally claims that Dean Lattimore retaliated by refusing to allow her to schedule a meeting with her internship students at a specific time based on his belief that such a meeting would conflict with other classes. DE 60 at 4. As discussed *supra*, Dean Lattimore advised Plaintiff in January of 2016 in a series of emails that she needed to make sure her planned class meeting could be attended by all of her students. It is unclear how this exchange could be viewed as adverse action given that Dean Lattimore does little more than require inclusivity of all the students:

> I just want to be sure that if you schedule any other meetings that they be clear of any class conflict from any student. In other words, that you find a time that is okay for ALL students to attend. It may have to be at night or late afternoon, or Friday, but you need to be sure there is no conflict with students' other classes.

DE 53-1 at 73-74 (capitalization in original). The evidence additionally shows that after Plaintiff attempted to schedule a meeting that *did* conflict with other classes, Dean Lattimore nevertheless accommodated Plaintiff's request to reschedule. DE 53-1 at 76-78; DE 61 at ¶¶ 45-48. Plaintiff asserts, without any supporting evidence, that her original scheduling attempt did not actually conflict with any other class. This is irrelevant, however, as Dean Lattimore's admonition based on the mistaken belief that such a conflict did in fact exist still does not rise to the level of a "materially adverse change in the terms and conditions of [Plaintiff's] employment." *McMillian v. Potter*, 130 F. App'x 793, 796 (6th Cir. 2005) (quoting *Hollins v. Atl. Co.,* 188 F.3d 652, 662 (6th

Cir. 1999)). Plaintiff has therefore failed to establish a *prima facie* case of retaliation with respect to Dean Lattimore.

Alternatively, the Court finds that even if Plaintiff had established a *prima facie* case of retaliation by Dean Lattimore, Defendant has articulated legitimate, nondiscriminatory reasons for Dean Lattimore's actions. Dean Lattimore was clearly authorized to both supervise Plaintiff's administration of her internship courses and attend her classes. Defendant has also provided evidence that Dean Lattimore's role at the University required him to "oversee scheduling and address conflicts with students' course." DE 61 at ¶ 43. It was thus within his purview to attend one of Plaintiff's classes and correspond with Plaintiff regarding the scheduling of her class meetings. Plaintiff has provided no evidence that such actions represented pretext for unlawful conduct. The Court therefore finds and concludes that summary judgment is appropriate.

### 3. Alleged Retaliatory Conduct by the University

Plaintiff argues that the University engaged in retaliatory conduct by failing to renew her contract after initially indicating that she would be retained. Because it is not disputed that such action represents a materially adverse action, the issue is whether there was a causal connection between the various grievances filed by Plaintiff and the decision to not renew her contract. *Singfield,* 389 F.3d at 565.

Although not directly addressed in her response to Defendant's motion, Plaintiff appears to allege retaliation based on the two grievances she filed in May of 2016 in which she complained of a conspiracy involving Dr. Wright, Dr. Cross, Dr. Counsell, Dr. Weddle-West, and Dean Lattimore to perpetuate retaliation and harassment against her. DE 53-1 at 79-85, 95-96; DE 61 at ¶¶ 49, 50. As noted *supra*, the first grievance was filed on May 15, 2016. The second grievance is neither signed nor dated, although Plaintiff claims that this grievance was filed "within days" of

15

Case 3:17-cv-01453 Document 66 Filed 01/27/20 Page 15 of 19 PageID #: 759

the first. DE 61 at ¶ 50. Regardless, the University notified Plaintiff on May 20, 2016 that it planned to offer her a contract for the next school year despite being aware of these grievances (DE 53-7 at 1), thus making it unlikely that the decision not to retain Plaintiff stemmed from the grievances. Plaintiff cites no evidence to suggest otherwise.

The more salient event is the filing of the EEOC charge on June 9, 2016, more than one month before the University informed Plaintiff that her appointment would not be renewed. DE 53-1 at 88. Given its temporal proximity to the EEOC charge, this decision would appear to represent Plaintiff's best argument for materially adverse action undertaken in response to protected activity. However, Defendant has provided evidence that the EEOC did not successfully advise the University of the charge until July 25, 2016, more than one week *after* the University informed Plaintiff of its non-renewal decision. DE 53-6 at 3-5; DE 61 at ¶¶ 56-60. Such evidence bolsters Defendant's argument that the University's decision was not in response to the EEOC charge.

Plaintiff does not address this evidence in her responsive filing. She instead relies on an attachment that purportedly represents a page from the University's faculty handbook on non-renewal of clinical and faculty appointments to argue that the University violated its own policy by failing to notify her of its decision by May 15. *See* DE 60-4 at 1. Even assuming that this untitled document does in fact pertain to faculty employment with the University, the contract between Plaintiff and the University contains no reference to notice other than a provision indicating that the agreement between the parties could be terminated "upon thirty (30) days notice." DE 53-1 at 42-43. Regardless, the issue is not whether Plaintiff received timely notice of the non-renewal decision but rather whether the University's action was a response to the filing of the EEOC charge. Plaintiff's oblique reference to an untitled document does not negate the substantial

16

evidence demonstrating that the University was unaware of the EEOC charge until after it had elected not to renew her appointment. Plaintiff has thus failed to make a *prima facie* case of retaliation with respect to the non-renewal of her appointment.

Alternatively, the Court finds that even if Plaintiff had established a *prima facie* case of retaliation by the University, Defendant has articulated legitimate, nondiscriminatory reasons for opting not to renew Plaintiff's appointment. These reasons include insubordination by Plaintiff in scheduling class meetings, engaging in "disruptive and threatening behavior" during meetings with colleagues, and the receipt of formal complaints from students regarding Plaintiff's teaching methods that were received after the University initially indicated to Plaintiff that it planned to retain her. DE 53 at 18. While Plaintiff has responded by citing multiple positive reviews from other students (DE 60-19 at 7-11), such evidence does not demonstrate that the University's decision represented pretext for unlawful conduct. The Court therefore finds and concludes that summary judgment is appropriate.

### 4. Hostile Work Environment

Because Plaintiff's brief could arguably be construed to assert that the University created a hostile work environment, Defendant additionally argues that summary judgment is appropriate as to any such argument. A hostile work environment is actionable under Title VII only if the workplace is "permeated with discriminatory intimidation, ridicule or insult sufficiently severe or pervasive to alter the conditions of employment." *Hawkins*, 517 F.3d at 333 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)) (internal quotations omitted). To succeed under such a claim, the plaintiff must establish that: (1) she belonged to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on race or national origin; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create

17

Case 3:17-cv-01453   Document 66   Filed 01/27/20   Page 17 of 19 PageID #: 761

an abusive working environment; and (5) the defendant knew or should have known about the harassment and failed to act. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).

As previously discussed, Plaintiff's brief does not address Defendant's arguments in any meaningful way. Plaintiff instead lodges numerous accusations against various employees of the University without citing any evidence to support her claims. The Court acknowledges that Plaintiff's *pro se* status entitles her to some measure of leniency, but this does not relieve her of the basic obligation to respond directly to Defendant's arguments and show, with evidentiary support, that genuine issues of material fact exist that require that the action proceed to trial. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

The only documents cited by Plaintiff in support of her allegation that Drs. Rudd, Counsell, and Wright were "abusive" and "intimidating" include an email from Dr. Counsell encouraging "open communication" among other employees and a correspondence from Dr. Wright admonishing students for failing to use appropriate professional titles. DE 60-19 at 1-3. Such behavior can hardly be considered retaliatory conduct. *See Rio v. NHC/OP, L.P.*, 149 F. Supp. 3d 839, 847 (M.D. Tenn. 2016) (events that cause "discomfort" to a plaintiff do not constitute adverse employment actions). Plaintiff testified to a separate incident in which she posted a note on her office door from one of her students commending her teaching, which allegedly prompted Dr. Wright to post a sign on his office door that contained "negative comments" about the note on Plaintiff's door. DE 53-1 at 18; DE 61 at ¶¶ 28-30.[19] Such behavior, however immature it may be, similarly falls well short of establishing an actionable hostile work environment claim. *See Campbell v. Norfolk Southern Corp.*, 876 F. Supp. 2d 967, 992 (N.D. Ohio 2012) ("Courts must

---

[19] Plaintiff does not describe the "negative" nature of the sign and the blurry picture of the sign provided as an exhibit is illegible. *See* DE 53-1 at 65.

18

consider the work environment as a whole, rather than focus on individual acts of alleged hostility.") (citing *Perkins v. Harvey,* 368 F. App'x 640, 646 (6th Cir. 2010)).

The vast majority of the conduct referenced by Plaintiff involves little more than common workplace discord, which is not sufficient to sustain a Title VII claim. *See White*, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."). Accordingly, the Court finds that Plaintiff has failed to establish the existence of a hostile work environment and therefore concludes that summary judgment is appropriate.

### III. Recommendation

Based on the foregoing, the Magistrate Judge recommends that Defendant's motion for summary judgment (DE 52) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any response to the objections must be filed within fourteen (14) days after service of objections.  Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge